## IDA B. FRANCIS, Appellant, v. RICHARD I. FRANCIS, Respondent.

St. Louis Court of Appeals.    Argued and Submitted October 5, 1915.    Opinion Filed November 2, 1915.

1. DIVORCE: Alimony: Nature and Enforcement. A judgment for alimony is so far a debt as to bar imprisonment for its nonpayment.

2. ———: ———: ———: Modification After Lapse of Term. A judgment for alimony, while a judgment and a fixed debt, unless and until altered, is in the nature of an interlocutory judgment, and the court that rendered it has power to alter it at a subsequent term, under Sec. 2375, R. S. 1909.

3. ———: ———: ———: ———: Facts Stated. Several years
after a wife had obtained a decree of divorce and a judgment
for alimony, the parties entered into an agreement to commute
the arrears of alimony at a fixed sum and to have the judg-
ment changed so as to award alimony in gross in the sum of
$1. The stipulated amount was paid by defendant, and he
thereupon filed a motion in the court that rendered the judg-
ment to have the same altered so as to conform to the agree-
ment, which motion was sustained and the judgment altered
accordingly. Held, that it was within the discretion of the
court, under Sec. 2375, R. S. 1909, to alter the judgment, and
that, in view of the agreement, it properly exercised its discre-
tion in doing so.

4. EXECUTIONS: Effect of Annullment of Judgment. Where
the judgment on which an execution rests is annulled, the ex-
ecution falls.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel
D. Fisher*, Judge.

AFFIRMED.

*Thos. H. Sprinkle* and *James T. Roberts* for ap-
pellant.

(1) There being no dispute between the parties as
to the amount then due by respondent, it therefore fol-
lows that there being no consideration, the payment of
the smaller amount would not extinguish the amount
unpaid. The rule of law in this State is: "That an
agreement between a debtor and a creditor whereby the
latter agrees to discharge the former on the payment
of a less sum than the debt is void for lack of consid-
eration, and that the payment of the less sum operates
only as a discharge *pro tanto*." Handson v. Crawford,
130 Mo. App. 252; Bartley v. Pictorial Review Co., 176
S. W. 489; Price v. Canon, 3 Mo. 318; Riley v. Kershaw,
52 Mo. 224; Klausman Brew. Co. v. Schoenlau, 32 Mo.
App. 357; Koerper v. Royal Inv. Co., 102 Mo. App. 543;
6 Am. & Eng. Ency. Law (2 Ed.), 377. (2) "The law
is well settled that an acceptance of a tender of part
of a liquidated indebtedness, qualified by the debtor, by

condition that the acceptance shall be in full satisfaction, does not discharge the balance unpaid or bar an action therefor, unless the dispute as to the sum due is in good faith, otherwise there is no consideration for the acceptance of the lesser for the greater amount." Water & Steam Supply Co. v. Douglas, 104 Mo. App. 434; St. Joseph v. Hull, 72 Mo. 403. (3) "An agreement by a creditor to take less than what is due, where there is no dispute as to the amount due, for the payment of his debt is without consideration and not binding upon him." Tucker v. Dolan, 109 Mo. App. 442; Young v. Schofield, 132 Mo. 650; Winter v. Railroad, 160 Mo. 159; Jaffrey v. Davis, 124 N. Y. 164. (4) An execution cannot be recalled or quashed unless error appears on the face of the judgment or on the face of the execution. As respondent failed to show an error either on the face of the judgment or the execution it was error in the court to satisfy the judgment and quash the execution. Cope v. Snider, 99 Mo. App. 496.

*Nagel & Kirby* for respondent.

(1) The right of the court below to modify the judgment for monthly alimony embraces not only payments to be made in the future, but also payments in arrears. The amount due for past alimony was therefore not a liquidated debt, but a contingent liability which could be settled by the payment of a less sum. Sec. 2375, R. S. 1909; Meyers v. Meyers, 91 Mo. App. 151; Creasey v. Creasey, 175 Mo. App. 237; Cavenaugh v. Cavenaugh, 106 Ill. App. 209; Barclay v. Barclay, 184 Ill. 375; Audubon v. Shufeldt, 181 U. S. 575; Alexander v. Alexander, 13 Ap. D. C. 334; Andrew v. Andrew, 62 Vt. 495; Tolman v. Leonard, 6 App. D. C. 224; Re Smith, 3 Amer. B. R. 67; Van Buskirk v. Mulock, 18 N. J. L. 188. (2) Even if it be held that a judgment for alimony cannot be modified so as to affect alimony in arrears, yet in this case, as the settlement was made with borrowed money, that fact furnishes the necessary consideration

and the rule that a liquidated liability cannot be settled by the payment of a less sum does not apply. Riley v. Kershaw, 52 Mo. 224; Henson v. Stever, 69 Mo. App. 136. (3) The judgment appealed from shows on its face that it was based upon admissions made by appellant, and as these admissions are not before this court, it will be presumed that they showed sufficient consideration to justify the court below in enforcing the contract. Nall v. Nall, 243 Mo. 247. (4) The court having the right by statute or by valid agreement of parties to modify the judgment, and having done so, the execution based on the original judgment became null and void for lack of a judgment to support it, and was therefore properly quashed. Mill Co. v. Sugg, 83 Mo. 476; Freeman on Executions, sec. 442; Critchfield v. Linville, 140 Mo. 191; Lemp v. Lemp, 249 Mo. 295.

STATEMENT.—On June 2, 1903, a judgment was entered in the Circuit Court of the City of St. Louis, divorcing the plaintiff, Ida B. Francis, from the defendant, Richard I. Francis, awarding plaintiff alimony in the sum of $40 per month, payable on the first of each and every month "until the further orders of this court," awarding her the care and custody of the children of the parties, and adjudging costs in favor of plaintiff and against defendant. No execution appears to have issued on this until June 13, 1912, when an execution, numbered 33, to the October, 1912, term, was issued in favor of plaintiff and against defendant for the sum of $6984.84, that being the amount of alimony which had accrued and was unpaid at that date. Under this execution the interest of defendant in certain realty appears to have been levied upon, an employer of defendant summoned as garnishee. Thereafter, as appears by stipulation on file, and on August 20, 1912, plaintiff and defendant entered into an agreement in writing and entitled in the cause in which it is set out that defendant had paid plaintiff six hundred ($600)

dollars, and that in consideration thereof, the court, "by consent of the plaintiff and defendant in the above-entitled cause shall render a judgment, order or decree discontinuing the accrual of alimony in said cause and ordering that said defendant, Richard I. Francis, pay said plaintiff, Ida B. Francis, the sum of one dollar ($1) alimony in gross, the said Ida B. Francis hereby acknowledged that the said six hundred dollars ($600) and the one dollar ($1) so received by her are accepted in full payment and satisfaction of all sums of alimony that have accrued or may hereafter accrue, either as alimony *pendente lite,* suit money, attorneys' fees, or temporary or permanent alimony from month to month or alimony in gross."

The agreement further provided that Ida B. Francis would appear in the court wherein the order was obtained on September 26, 1912, or as soon thereafter as may be convenient to the court, and acknowledge satisfaction of the judgment and cause satisfaction to be entered of record on the minutes thereof and properly signed by her, attested by the clerk.

It was further agreed between the parties that any and all executions heretofore issued in the cause shall be quashed and held for naught and the garnishment proceeding brought by plaintiff in the cause against the garnishee named, garnisheeing the wages of Richard I. Francis, should be "and are hereby dismissed," and the garnishee authorized to pay Richard I. Francis any and all sums of money now due him from it, and the levy or levies under the execution on any and all real estate in the city of St. Louis "are hereby released." This is signed by plaintiff and defendant and acknowledged by Ida B. Francis and Richard I. Francis before a notary public August 20, 1912. On the same date, that is, August 20, Ida B. Francis executed another instrument, reciting the obtaining of the decree of divorce and that it awarded alimony and suit money, the alimony at the rate of $40 per month, be-

ginning June 2, 1903, and setting out that the
parties "are desirous of settling in full all claims
for alimony, past, present and future, as also suit
money," it was agreed that in consideration of the
premises and of the payment of $600, "the receipt
of which is acknowledged," Ida B. Francis releases
and discharges Richard I. Francis from any and
all claims she may have upon him by way of ali-
mony, past, present or future, or otherwise, or for
suit money, and further agrees to satisfy or cause to be
satisfied the decree and judgment for alimony or suit
money, the satisfaction to be of record and in full pay-
ment and satisfaction thereof, and that in default there-
of Ida B. Francis authorized an attorney at law named
to satisfy the judgment in full for all alimony, past,
present and future, and suit money at any time after
fifteen days had elapsed from September 25, 1912. This
motion was acknowledged before a notary public by Ida
B. Francis.

Following this on September 12, 1912, Ida B. Fran-
cis caused a notice to be served on the attorney named,
on the clerk of the circuit court and on Richard I.
Francis, to the effect that she had revoked "and do
hereby revoke" all power and authority conferred upon
the attorney by virtue of the instrument of August 20,
notifying the clerk that she had revoked it, and that he
(the clerk) was not to enter of record or in court any
satisfaction or attempted satisfaction of the judgment,
and notifying Richard I. Francis that the stipulation
entered into between her and him, of August 20, "being
void in law, I hereby withdraw my consent thereto."

We gather from the abstract, although that is not
distinctly set out, that after service of these notices
another execution, also numbered 33, was issued on the
order of the then attorney for plaintiff on the judgment
of June 2, 1903, for the accrued alimony specified in that
decree. It also seems that a new levy on real estate was
made under this last execution and process of garnish-

ment sued out and served on the same party summoned under the former execution. The date of the issue of the second execution is not stated, but it is referred to in the judgment of the court as execution number 33, also returnable to the October, 1912, term of the court.

Afterwards, and on October 5, 1912, and during the October term of the court, the stipulations which had been signed by the parties were filed and thereafter and at that term defendant filed a motion to quash the execution and to release the garnishee from the summons. This motion sets out the judgment for alimony of date June 2, 1903, and that the plaintiff by and through her attorney named had issued an execution for the collection of the accrued alimony; that that attorney had had a summons issued against the party named as garnishee of the defendant and had ordered a levy upon the real estate standing in the name of the defendant. The motion further set out that as a result of this garnishment proceeding, evidently referring to that under the first execution, defendant had sought out plaintiff and her attorney, and in good faith agreed and contracted with plaintiff as above set out; that thereupon defendant had borrowed $601, the amount necessary to pay plaintiff in accordance with these agreements and did pay her the sum of $601, but as the court was not in session at the time, it was provided, as set out in these agreements, that proper orders should be entered of record as soon as the court could convene and the parties could be heard; that in pursuance of the agreement plaintiff had released the garnishee from this summons and had released the real estate levied upon under the execution theretofore issued in the cause. It is further averred that defendant had paid the sheriff the costs of the execution, and that plaintiff had contracted, in good faith, to appear in court and enter satisfaction of the judgment in pursuance of the contracts and agreements entered into as above set out. Averring that in violation of the agreement and con-

tract entered into and partially performed by plaintiff, another attorney acting in the name of plaintiff has caused to be issued a summons to the garnishee named, returnable to the December term, which summons and the execution then issued, defendant moves the court to set aside and quash. This motion was signed and sworn to, as we gather by defendant.

On the same day defendant filed a further motion in the cause, moving the court to enter an order, "setting aside the order heretofore made and entered for alimony and maintenance of the plaintiff (the former wife of defendant), and to enter an order of record allowing plaintiff the sum of $1 for alimony in gross." The reasons assigned are a repetition of the agreements between the parties as before set out. It is further again averred, in this latter motion, that defendant had paid plaintiff the $601 on August 20, and that in execution and performance of her part of the contract plaintiff had released the garnishment proceedings and the execution levied on the real estate of defendant. The motion concludes with a prayer that the court enter of record an order to the effect that by consent of the parties the allowance heretofore made plaintiff be set aside and alimony in gross, in lieu of that theretofore allowed, be now awarded plaintiff, in the sum of $1.

The cause came on for hearing on these motions on December 2, 1912, the parties appearing by their respective attorneys and the court proceeded to hear them on a stipulation which embraced the agreements above set out as well as the revocation of them by the plaintiff, found that plaintiff, in the stipulations and agreements "and from admissions of plaintiff's counsel made in open court, freely executed, stipulated and agreed that the court should modify, by the consent of both parties hereto, the former allowance of alimony, and the plaintiff further duly acknowledged the execution of said stipulations and agreements before a notary

public on, to-wit, August 20, 1912;'' that both parties had agreed and consented to the modification of the allowance for alimony as set forth in the stipulations and agreements, and the court accordingly found that the order of alimony entered on June 2, 1903, should be modified as follows:

"It is therefore considered and adjudged by the court that the order of June 2, 1903, wherein plaintiff was allowed the sum of $40 per month alimony, be and the same is hereby modified to read as follows:

" 'That plaintiff do have and recover of defendant the sum of one dollar ($1) as alimony in gross.' ''

The court further sustained the motion of defendant to set aside and quash the execution issued in the cause under and by which a writ of garnishment had been issued against the garnishees, the judgment again reciting that the court had heard the same "and statements and arguments of counsel for plaintiff and defendant and reviewing the stipulations and agreements heretofore made and entered into by and between the parties hereto, as hereinbefore set forth, the court finds that the executions issued herein, being executions No. 33, June term, 1912, and No. 33, October term, 1912, should be set aside and for naught held.''

This was followed by a formal order, setting aside and quashing these executions "and any and all writs and levies or orders therein or thereunder.''

Plaintiff filed written exceptions to this and these being overruled has duly appealed.

REYNOLDS, P. J. (after stating the facts).—Learned counsel for appellant assign four grounds for reversal of the judgment herein:

First, lack of consideration for the agreement between the parties; that an agreement between a debtor and a creditor, whereby the latter agrees to discharge the former on the payment of a less sum than the debt, is void for lack of consideration, and that the payment of the less sum operates only as a discharge *pro tanto*.

Second: That an acceptance of a tender of part of a liquidated indebtedness, qualified by the debtor by condition that the acceptance shall be in full satisfaction, does not discharge the balance unpaid or bar an action therefor, unless there is a dispute in good faith as to the sum due; otherwise there is no consideration for the acceptance of the lesser for the greater amount.

Third: An agreement by a creditor to take less than what is due, there being no dispute as to the amount due, in payment of his debt, is without consideration and not binding.

Fourth: An execution can only be quashed for error on the face of the judgment or execution.

It is obvious that the first three points made by counsel are sound in law; their application to this case on its facts, and on consideration of the nature of a judgment awarding alimony, is another matter.

That a judgment for alimony is so far a debt, under our system, as to bar imprisonment for its nonpayment, is settled in our State. Our court, in the case In re Kinsolving, 135 Mo. App. 631, 116 S. W. 1068, following the holding of our Supreme Court in Coughlin v. Ehlert, 39 Mo. 285, so held, holding that the husband could not be imprisoned as for contempt of court for its nonpayment. The question of the power of the court over a judgment for alimony after its rendition, was not there before us and not considered in any manner whatever.

In Dreyer v. Dickman, 131 Mo. App. 660, 111 S. W. 616, it is held that a judgment for permanent alimony to be paid in continuous monthly installments, was subject to the same incidents as any other judgment and that the Statute of Limitations of actions on judgments applied to such judgment, so that execution could not issue on it after the expiration of ten years. That is all that was in decision in that case. The control of the court over the judgment, even after the expiration of

ten years was in no manner in issue or determined in that case.

These are the cases chiefly relied upon by learned counsel for appellant in support of their contention that this judgment awarding alimony, is so far a fixed debt, that it is beyond the control of the court to change or modify it so as to affect alimony which, up to the time of the issue of the execution, had accrued, and that nothing but full payment would discharge it, there being no controversy in good faith as to its being due and unpaid.

It is said by Mr. Bishop (vol. 2, sec. 840) in his work on Marriage, Divorce & Separation, that divorce litigation is in its nature exceptional, rendering it as to alimony or the support of a wife never at an end during the joint lives of the parties, "and such was the law which traveled to this country from England, to become common law here. For the course in the ecclesiastical courts, followed afterwards by the Divorce Court, was, not only to receive applications to vary the alimony at times and terms of the court however remote after the granting of the divorce, but if the question of alimony was not passed upon before the divorce sentence was entered and the court adjourned, to entertain in the same cause, an original petition for it at any subsequent time or term."

Cooke v. Cooke, 2 Phillim. 40, 1 Eng. Ec. 178, and Covell v. Covell, Law Rep. 2 P. & D. 411, are cited *inter alia* in support of this.

So too, our courts have, in effect, held under our statute. See Meyers v. Meyers, 91 Mo. App. 151, where the motion to change the amount of alimony was filed over four years after the award and after the decree for divorce had been rendered. See, also, Libbe v. Libbe, 166 Mo. App. 240, where the motion for alimony was made after the divorce part of the cause had ended, alimony not having even been prayed for by the wife in her cross-bill.

Unlike the practice in England and in some of our States, we generally reach these judgments in divorce proceedings—when it is sought to change them as to alimony and the custody of children—by motion, not by bill of review, although section 2381, Revised Statutes 1909, does provide for a review of the orders touching alimony and the custody of children.

Mr. Bishop (supra), section 1077, says that an application to increase or decrease alimony may be made either by motion or by new process.

Turning to our own statutes concerning divorce and alimony, we have these:

Section 2375, Revised Statutes 1909, provides: "When a divorce shall be adjudged the court shall make such order touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as, for the circumstances of the parties and the nature of the case, shall be reasonable. . . . *The court on the application of either party, may make such alteration, from time to time, as to the allowance of alimony and maintenance, as may be proper,*" etc.

Section 2381 provides:

"No petition for review of any judgment for divorce, rendered in any case arising under this article, shall be allowed, any law or statute to the contrary notwithstanding; but there may be a review of any order or judgment touching the alimony and maintenance of the wife, and the care, custody and maintenance of the children, or any of them, as in other cases."

In Dorrance v. Dorrance, 257 Mo. 317, 165 S. W. 783, it is said that the first clause of this section 2381 is unconstitutional, if it is held to deprive a court of equity of power to set aside a divorce for fraud. While in Dorrance v. Dorrance, 242 Mo. 625, 148 S. W. 94, it is held that such an attack is not a "bill of review" and hence not within the prohibition of this clause of the statute.

192 App. 46

Mr. Bishop (supra), section 847, has said:

"But an alimony decree has in most of our States only a sort of interlocutory force, is liable to be varied from time to time by the court which pronounced it, and is enforceable only on process issued from such court."

In those jurisdictions in which actions for divorce are heard on the equity side of the court as cases in chancery or as formerly by the ecclesiastical courts of England, the right of the court to alter the order for alimony has been recognized and exercised in very many cases. Judge JOHNSON, speaking for the Kansas City Court of Appeals, has said, in Libbe v. Libbe, supra (l. c. 247):

"Our statutes relating to alimony and suit money are but a modern adaptation of the rules and practice of the ecclesiastical law."

A reference to these decisions of other courts in detail would serve no useful purpose. A leading case in which the judgment was rendered by Dr. Lushington, in the ecclesiastical court of England, is that of De Blaquiere v. De Blaquiere, 3 Haggard's Ecc. Rep. 322. In that case the right of the court to remit past due and unpaid alimony was exercised as an undoubted right. There both parties had long abstained from applying to the court for a change of the alimony first awarded, the husband, who had been divorced *a mensa et thoro* on account of his adultery, applying for a reduction of alimony allowed but largely in arrears, the wife on the other hand then applying to enforce its payment. The court held that it would not enforce the arrears nor inquire as to the sums paid by the husband for his wife's debts incurred by reason of nonpayment of that alimony, nor would it reduce alimony on account of an express waiver of a part thereof by the wife. The decree of separation was entered in May, 1820. From that time until his application for the reduction of the amount allowed and for the greater part of which he was in arrears, the husband had not filed any applica-

tion for the reduction until February, 1829. The court held that it was open to the wife to have made the application to enforce payment of the allowance at any time during the interval and as she had failed to do so until her husband had taken steps to have the amount reduced, it affirmed the decree for the amount of alimony allowed but declined to enforce payment of that part of it due prior to the commencing of the last quarter of the time in which the proceedings for its alteration had been filed. That is to say, the court, long after the alimony had been fixed, remitted the payment of all of it in arrears, except for the one year commencing with the quarter preceding the application to the court.

In Linton v. Linton, 15 Q. B. Div. 239 (Law Rep. 1884-1885), it was held that if circumstances had changed in the pecuniary ability of the husband to pay alimony awarded so that what was previously a fair amount of alimony is not a fair amount now, he is at liberty to apply to the judge of the divorce court for an alteration in the amount of the alimony. It was said by CAVE, J., in the lower court, that alimony, by agreement of the parties, was fixed by the court at a certain sum, payable at stated times. The husband fell in arrears for the payment of certain installments, and the wife proved up the amount of arrears as a debt. The husband appealed from the allowance and on its affirmance by the court, appealed to the Court of Appeals. There Sir RICHARD BAGGALLAY, L. J., said (l. c. 245):

"An order for the payment of alimony may be varied from time to time according to the means of the husband; there is, therefore, no means of putting a value upon the future payments for the purpose of a proof in bankruptcy."

Lord Justice BOWEN said (l. c. 246), that while it might be that arrears of alimony are a debt within the provision of the bankrupt law, they do not constitute a debt of law; a peculiarity of a judgment awarding ali-

mony, distinguishing it from other judgments is, that in a sense, it is not final.

So it was held by the Supreme Court of New Jersey in Van Buskirk v. Mulock, 18 N. J. Law, 184.

In Audubon v. Shufeldt, 181 U. S. 575, it is said by Mr. Justice GRAY, who delivered the opinion for the court:

"Alimony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction. Generally speaking, alimony may be altered by that court at any time, as the circumstances of the parties may require. The decree of a court of one State, indeed, for the present payment of a definite sum of money as alimony, is a record which is entitled to full faith and credit in another State, and may therefore be enforced by suit. [Barber v. Barber (1858), 21 How. 582; Lynde v. Lynde (1901), 181 U. S. 183.] But its obligation in that respect does not affect its nature."

Mr. Justice GRAY, in his opinion in the above case, quotes approvingly from Tolman v. Leonard, 6 App. D. C. 224 (1895), l. c. 233:

"The allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. It may be changed in amount, even when in arrears, upon good cause shown to the court having jurisdiction. The fact that such a decree may be sued upon under certain circumstances, or enforced, as is the case in some jurisdictions, by either execution or attachment of the person, or both, does not, in our opinion, change its essential character."

Alexander v. Alexander, 13 App. D. C. 334, is also cited by Mr. Justice GRAY approvingly. In that case the decree of divorce from the bonds of matrimony had been awarded in favor of the wife against the husband,

adjudging alimony at the rate of $50 per month. This decree was rendered July 11, 1877. In February, 1878, the alimony being in arrears and unpaid, the wife petitioned the court for an order to compel its payment. This order was made. Various steps and proceedings followed, the court finally reducing the alimony, both that in arrears and that to accrue. From this the husband, not satisfied with the reduction, appealed. The wife subsequently filed a bill of review, setting out the facts as to the reduction of alimony in arrears and to be paid, alleging in her bill that all the orders and decrees passed in the case subsequent to the original decree of July 8, 1877, which in any way altered or affected the original decree were, so far as they reduced the alimony allowed by the original decree, null and void on the ground, as claimed, that the original decree had become an absolute finality beyond the power of the court to change in any manner except upon the petition of the complainant to increase the amount of the alimony. This bill of review was demurred to and pleas filed to it and on hearing the bill of review was dismissed. On appeal, after considering other phases of the case, the Court of Appeals of the District of Columbia, in an exhaustive opinion, in which the nature of alimony and the control of the court over it, are reviewed, held, to quote the syllabus, which we find sustained by the opinion:

"Where a decree for divorce *a vinculo,* at the suit of the wife, allows the wife a certain fixed monthly sum as alimony, and reserves to her the right to apply at any time for an increase, but contains no reservation to the husband for leave to apply for a reduction, the court may nevertheless at any time thereafter entertain an application on his part for a reduction, and upon a proper showing grant it."

We are met with no such question over the omission from the decree before us of any reservation of a

right to change the decree, for as we have seen, our statute gives that right—a right, as we shall hereafter see, often exercised by our courts.

The effect of our law, and so the decisions in other jurisdictions hold, and as stated by Mr. Bishop hereinbefore quoted, is that the judgment awarding alimony is in a manner an interlocutory judgment, changeable at any time. Until changed it is enforceable as other debts, by execution, but this in no degree lessens the power of the court to change it from time to time.

In Schmidt v. Schmidt, 26 Mo. 235, an action for divorce, the decree went in favor of the wife, who was also awarded the custody of the child and allowed $150 for her support for one year, payable in quarterly installments. Said Judge SCOTT (l. c. 236):

"All that portion of the decree which relates to the subject of alimony, is subject to the future control of the court."

In Meyers v. Meyers, supra, a decree was entered granting plaintiff an absolute divorce from her husband and awarding her the custody of her minor children. It was further ordered and adjudged that defendant pay plaintiff, by way of alimony and in addition to suit money and other payments, $30 per month to be paid on the 15th day of each month "until the further order of this court." This decree was entered in the circuit court in July, 1896, that is to say during the June term of the circuit court of the city of St. Louis. At the October, 1900, term of that court, plaintiff filed her motion for an increase of monthly alimony on the ground that her former husband's income and ability to pay had been increased and that plaintiff was unable to support herself and minor children on $30 per month. It was in evidence that the allowance of alimony as entered in the decree for divorce was made by the court in pursuance of an agreement touching that made by the parties after the court had announced that it would grant a divorce to the wife, as was also

the order awarding her the custody of her five minor children. After hearing the motion for increase of allowance, the trial court overruled it, and the case was appealed to our court. Here, in the opinion by Judge BLAND, he states (l. c. 155):

"We agree with the respondent's learned counsel that so far as the alimony, in gross, is concerned, consisting of an award of specific property to plaintiff, the judgment is final; but is not final as to the stipendiary alimony of thirty dollars per month. Both by the judgment and by the statute (section 2026, R. S. 1899), the order for monthly alimony is left open subject to the further, that is, future, orders of the court, and is subject to such modifications from time to time as the changed condition of the parties in the future might justify."

Referring again to this section of the statute of 1899, now section 2375, which authorized the court, on the application of either party to "make such alteration from time to time as to the allowance of alimony and maintenance as may be proper, the learned judge says (l. c. 156):

"This section seems to us to authorize the court to modify an order for maintenance of the children as well as the order for the maintenance of the wife."

The order of the circuit court overruling the motion was affirmed, all the members of the court concurring in that result, but two of them expressing no opinion as to the intimation thrown out by the Presiding Judge as to future applications which might be made for the support of the minor children, leave to make such amendment being granted.

"There can be no doubt that under this statute (sec. 2381, R. S. 1909) the court granting the divorce retains jurisdiction for the modification of the judgment or decree touching the maintenance of the wife and the custody of the children." [NORTONI, J., in Wald v. Wald, 168 Mo. App. 377, l. c. 383.]

"A judgment for divorce, so far as alimony and the support and custody of children is concerned, is not a closed incident, like other judgments. As to these matters it can accomplish its true end only by remaining perpetually open for variations to be made from time to time as the changed circumstances of the parties and the children may require (1 Bishop on Marriage, Divorce & Separation, sec. 822). As respects the custody of the children, a divorce suit can in its nature terminate only with their majority. [Ibid, sec. 826]. And, in addition to this, our statute gives the court power to modify the judgment as to such matters. [Sec. 2381, R. S. Mo. 1909.]" [Trimble, J., in Phipps v. Phipps, 168 Mo. App. 697, l. c. 700, 154 S. W. 825.]

To sum up the matter, our conclusion is, that a judgment for alimony, while a judgment and a fixed debt, unless and until altered, is more in the nature of an interlocutory judgment. The court that rendered it has power to alter it. So says our statute; so the English ecclesiastical, as well as the chancery courts, the courts of other States and our own courts hold. The power conferred over judgments allowing alimony is not restricted in any way in its operation. There are no words of restriction confining it to alimony to accrue. It covers the whole subject of alimony and vests the court in which it was awarded with power to control it at any time and in any manner. That being so, when these parties here entered into an agreement to commute the arrears at a fixed sum and to have the order of alimony changed so as to award alimony in gross in the sum of $1, they were doing what they had a right to do and what the court could have done for them without their consent. It required no consideration, valuable or otherwise to sustain an agreement to change or an order making the change. It lay in the discretion of the court, on con-

sideration of the facts and circumstances in the case, to change it.

In the case at bar we have the fact of the plaintiff here, by a solemn covenant and agreement in writing, acknowledged by her before a public official, agreeing to accept $600 in satisfaction of the accrued installments, to have the former order or judgment changed accordingly by the court, and to accept $1 in lieu of alimony in gross. The money was paid over to her by plaintiff. That he borrowed the money is not material; that would only be material if the lender was here seeking the aid of the court. There is no pretence that any fraud or imposition was practiced upon the plaintiff. She made the agreement with the aid of counsel she had chosen, and as far as it was then possible, she had carried out her part of the agreement by withdrawing the execution and releasing the garnishment. Here in point of fact was a valid executed contract, which plaintiff could not rescind. When the court enforced it, it did no more than what it had a right to do, independent of the agreement, and as we have said, simply enforced and carried out the contract that the parties had made. Under such circumstances we do not think that the case presented is one of the discharge of a fixed debt for a sum less than that debt or that it is the release of a fixed obligation or debt for a smaller amount.

Touching the final point as to quashing the execution, it is sufficient to say that the judgment upon which it purported to rest, having been annulled, the execution fell with it.

We find no reversible error in the action of the trial court and its judgment is affirmed. *Nortoni* and *Allen, JJ.,* concur.